## AFFIDAVIT OF SPECIAL AGENT JENNIFER L. WEIDLICH

I, Jennifer L. Weidlich, being duly sworn, hereby depose and say:

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") assigned to the Boston Division, and have been so employed for approximately eleven (11) years. I am currently assigned to the Worcester Resident Agency of the Boston Division of the FBI. I have received specialized FBI training in the investigation of computer and computer-related crimes and crimes involving the sexual exploitation of children. My responsibilities include the investigation of various criminal offenses, including the investigation of crimes involving the sexual exploitation of children. Since my assignment to the Worcester Resident Agency, I have been assigned and have participated in numerous investigations of crimes involving the sexual exploitation of children via the Internet.

2. This affidavit is submitted in support of the issuance of an arrest warrant for, and a criminal complaint against, Matthew CLEM ("CLEM"), charging him with Knowing Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2), Production of Child Pornography, in violation of Title 18, United States Code, Section 2251(a), and Enticement of a Minor, in violation of Title 18, United States Code, Section 2422(b), (the "Subject Offenses"). As described below, there is probable cause to believe that in or about the summer of 2012 and in or about the early fall of 2014, in Worcester, Massachusetts, CLEM knowingly committed the Subject Offenses.

3. The information set forth in this affidavit is based on an investigation conducted by law enforcement agents, including myself. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts that I believe to be

necessary to establish probable cause for issuance of an arrest warrant for, and a criminal complaint against, CLEM.

## RELEVANT STATUTES

4.      Generally, Title 18, United States Code, Section 2252A, makes it illegal for any person to knowingly transport, ship, receive, distribute, or possess, in or affecting interstate or foreign commerce, any visual depiction, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.  Each subsection of Section 2252A specifically refers to computers as one means by which a visual depiction may travel in and/or otherwise affect interstate commerce.

5.      Generally, Title 18, United States Code, Section 2251, makes is illegal for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct.

6.      Generally, Title 18, United States Code, Section 2422(b), makes it illegal for any person to use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense.[1]

7.      For purposes of this affidavit, any individual below the age of 18 will be referred to as a "child" or "minor," and any visual depiction of a child or minor engaging in "sexually explicit conduct," as that term is defined in Title 18, United States Code, Section 2256(2)(A), will be referred to as "child pornography."

---

[1]      For instance, Massachusetts General Law, Chapter 265, Section 23A, criminalizes the following conduct: "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under 16 years of age and . . . (b) there exists more than a 10 year age difference between the defendant and the victim where the victim is between the age of 12 and 16 years of age . . . ."

**BACKGROUND OF INVESTIGATION**

8.      On October 24, 2014, Detective Brian Bisceglia, Worcester Police Department, interviewed a minor female (hereinafter, "JV-1").[2] The fifteen (15) year-old minor female reported that she had been corresponding with an individual via Kik Messenger ("Kik"),[3] who was utilizing user name usmcmrc1166 and identified himself as "Matt." JV-1 utilized Kik to communicate with "Matt" from approximately the beginning of September 2014 through mid-to-late October 2014, during which time she was 15 years old. JV-1 told usmcmrc1166 that she was a sophomore in high school. Usmcmrc1166 eventually asked JV-1 to send nude photographs of herself to him. JV-1 complied and sent images depicting her naked breasts and genitalia with her iPod and iPhone. JV-1 received one image from usmcmrc1166 that, according to "Matt," depicted his erect penis.[4] JV-1 advised that usmcmrc1166 wanted to have sex with her and coached her to disable her alarm system to get out of her residence undetected to meet up with him.[5]

9.      On or about October 24, 2014, JV-1's father voluntarily provided JV-1's iPhone and iPod to Detective Bisceglia at the Worcester Police Department and provided consent to search both devices. On November 11, 2014, the contents of JV-1's iPod were downloaded utilizing a Cellebrite touch device by Detective Bisceglia. Upon reviewing the extracted data,

---

[2]     The identity of JV-1 is known to your affiant.

[3]     Kik Messenger is an instant messaging application for mobile devices from Kik Interactive. The application is available on iOS, Android, and Windows Phone operating systems free of charge.

[4]     In addition to the image JV-1 received depicting usmcmrc1166's genitals, she also received several other photographs, to include a photograph of him in a military camouflaged uniform and a photograph of him wearing sunglasses while in a vehicle with a dark gray interior.

[5]     Additional details from an interview with JV-1 are described below.

several images were recovered. For purposes of this affidavit, two images are specifically described as follows:

    a. Image "IMG_2194.JPG" depicts a close up view of a female digitally penetrating her vagina with her index and middle fingers.

    b. Image "IMG_2195.JPG" depicts a close up view of a female digitally penetrating her vagina with her middle finger.

10. The metadata associated with the above-described images indicates that the images were created on October 8, 2014 at 4:25:20 a.m. (UTC) and October 8, 2014 at 4:30:40 a.m. (UTC), respectively. On January 28, 2015, JV-1 was shown the above-described images that were recovered from her iPod. She identified the images with ninety-nine (99) percent certainty as the images that she sent to usmcmrc1166 via Kik.[6]

11. On December 3, 2014, Detective Bisceglia received information, based upon a subpoena request, from Kik Interactive showing that user usmcmrc1166 registered for the account with email address mattyrc2025@hotmail.com. Kik Interactive also provided the thirty day Internet Protocol (IP) address history associated with the account, i.e., the history of IP addresses from which the account had been accessed, which identified IP address 75.130.110.149 among the recent login history.[7] IP address 75.130.110.149 resolved to Charter Communications (Charter). On December 22, 2014, based upon a subpoena served upon Charter for the dates and times IP address 75.130.110.149 was utilized to login to Kik account

---

[6] It is noted that additional images were recovered from JV-1's iPod showing her naked breasts that she also identified as having sent to usmcmrc1166.

[7] The response from Kik included the time period November 1 through December 2, 2014. The records identified multiple IP addresses from which the account had been accessed during that time period, but IP address 75.130.110.149 was the most recent one to access the account. That same IP address also accessed the account on several other days during the reporting period.

usmcmrc1166, Charter identified Gary Fuller, 14 Park Street, North Brookfield, Massachusetts 01535 as the individual to whom that IP address was assigned at those dates and times. In fact, IP address 75.130.110.149 was assigned to Fuller from January 7, 2013 16:19:16 (GMT) to December 16, 2014 at 21:40:41 (GMT) continuously.

12. A Massachusetts Registry of Motor Vehicle query identified three individuals with active driver's licenses at 14 Park Street, North Brookfield, Massachusetts, to include Gary Fuller, Fuller's wife, and Matthew Robert Clem, year of birth 1984.[8]

13. On January 28, 2015, Detective Bisceglia deconflicted IP address 75.130.110.149 with the National Internet Crimes Against Children (ICAC) database. The deconfliction revealed that the Massachusetts State Police were investigating the same IP address within the time frame it was assigned to 14 Park Street, North Brookfield, Massachusetts. On February 2, 2015, Trooper Matthew Prescott informed Detective Bisceglia that the Massachusetts State Police were investigating two CyberTips involving IP address 75.130.110.149: one from the National Center for Missing and Exploited Children (NCMEC); and, one from MeetMe.[9] Both CyberTips appeared to contain the same information regarding a particular incident. The summary of the incident is as follows: A MeetMe staff member discovered an adult posing as a juvenile and having inappropriate interaction with juveniles. The staff member also discovered additional MeetMe profiles with similar information (IP address, password). Some of the suspect profiles indicated that the user was an adult, while others indicated that the user was a

---

[8] It is noted that the initials mrc are contained within the Kik user account usmcmrc1166 and the email address associated with the account is mattyrc2025@hotmail.com.

[9] MeetMe is a social networking service available on the Internet and via Smartphones where visitors create personal profiles, post photographs, and socially interact with each other via private messages, instant messenger (IM), live webcam, and on various message boards.

juvenile. Both Cybertips contained four MeetMe profiles that were linked by IP addresses and passwords.[10] One of the CyberTips also contained correspondence between Liam Davis (profile age 15) and a minor female identified as JV-2 (profile age 13) during which Davis solicited JV-2 for sex purportedly for his twenty (20) year-old cousin who was coming home from the Marines by saying, in part, "I messaged you cause my cousin mark is 20 and home from the marines:) he thinks you are fucking sexy and would love to chill and chat" and "It would be hot though:) the sex would be amazing and he wouldn't hurt ylu (sic)". JV-2 responded as follows: "IM FUCKING 14!! Just get the fuck away from me."[11]

14. Based upon the information contained in paragraphs 8 through 13 above, a state search warrant was applied for and obtained for the residence of Matthew Clem, 14 Park Street, North Brookfield, Massachusetts and a joint state and federal investigation was initiated. The search warrant was executed by members of the Worcester Police Department, the Massachusetts State Police, Homeland Security Investigations (HSI), and the FBI.

## THE INSTANT JOINT INVESTIGATION

15. The state search warrant, applied for and authorized on March 11, 2015, was executed at 14 Park Street, North Brookfield, Massachusetts, on March 13, 2015. CLEM was present at the residence and was voluntarily escorted to the North Brookfield Police Department to be interviewed out of the presence of his wife and in-laws. Upon arrival at the police department, CLEM was advised of and executed a written waiver of his Miranda Rights.

---

[10] The names and corresponding email addresses of the four identified MeetMe profiles are as follows: Matt Steele, mattsteele1384@gmail.com; Liam Davis, liamdavis1384@gmail.com; Liam Daviston, ldaviston1166@gmail.com; and, Jeff Wood, jeffwood3346@gmail.com.

[11] JV-2 was identified and located by your affiant and Detective Bisceglia. Her profile name was omitted for purposes of this affidavit because it contains her true name.

Thereafter, CLEM was interviewed by Detective Bisceglia and Trooper Prescott. The interview was audio recorded.

### Interviews of Matthew Clem

16. On May 13, 2015, Detective Bisceglia read CLEM his Miranda Rights at the North Brookfield Police Department which CLEM stated he understood and signed a Miranda waiver indicating as much. In summary, CLEM provided the following information during this interview: CLEM advised that he had used Match, Kik, and MeetMe to meet females via the Internet. He continued correspondence with the females he met online via Kik and text message. He uses email address jgane1166@email.com to login to his MeetMe account, but has used other email addresses to login to MeetMe. CLEM primarily searched for females who were fourteen (14) to twenty-one (21) years-old on MeetMe. CLEM utilizes Kik username usmcmrc1166. CLEM has the Kik application on his iPhone and has received regular and nude images via the application from minor females as young as fourteen (14) years-old.

17. CLEM lied about his identity online, but has sent images of his real face and genitals to individuals, to include minors via Kik. CLEM also took pictures of other individuals in military uniform from Google and claimed the pictures were of him. CLEM never served in the military, but believed the pictures made him seem more attractive. He also said that he had a cousin in the Marines which was also made up. In addition, CLEM has sent a picture depicting him in day glow yellow from when he was a police officer in Provincetown. He advised he was kicked out of the police academy at week twenty (20) for lying.

18. CLEM has met girls in person that he initially met online. CLEM has met minors as young as 14 years-old for the purpose of engaging in sexual intercourse and oral sex. CLEM is employed by Crompco and performs environmental testing. He travels frequently for work

and has used his work truck to pick up minor females. The minor females provided CLEM with a physical address to meet them. Some of the girls had to wait until their parents were asleep to sneak out of the house. CLEM also recalled on at least one occasion being told that one of the girls' homes had an alarm system.

19. CLEM has been meeting with a minor female from Millville for approximately one and half years.[12] He most recently picked JV-3 up from her father's house and took her to the Econolodge in Sutton, but did not engage in sex with her. On previous occasions, CLEM engaged in sexual intercourse with JV-3 in his car and at the Econolodge in Sutton. She was approximately fourteen (14) years old the first time he met her and she is now sixteen (16) years old.[13]

20. CLEM picked up a minor female that he met on MeetMe and believed to be sixteen (16) years-old in the Acton/Boxborough area ("JV-4"). He took her to the Holiday Inn on Route 111 in Boxborough on two occasions and had sex with her.[14]

21. CLEM was shown his iPhone at the end of the interview and provided additional information after being shown the Kik user names and chats on his phone. CLEM met a minor female who is approximately fifteen (15) or sixteen (16) years-old at her 2nd floor apartment

---

[12] CLEM identified the minor female by first name, provided the area code and first three numbers of her phone number, and the location of her number within the contacts of his iPhone. When shown his iPhone at the end of the interview, CLEM also identified her Kik user name. The identity of the minor female (hereinafter, "JV-3") is known to your affiant.

[13] Additional information from an interview of JV-3 is described below.

[14] The identity of JV-4 is known to your affiant.

residence in Worcester to have sexual intercourse with her ("JV-5").[15] CLEM also "hooked up" with a female who he believed to be sixteen (16) years old in Chepachet, Rhode Island.

22. On March 26, 2015, CLEM was accompanied to the Worcester Police Department by his attorney. The purpose of the interview was for CLEM to voluntarily identify the specific locations where he picked up potential victims. CLEM was provided with an Advice of Rights form by your affiant that was read aloud to him, he stated he understood, and signed in the presence of his attorney who served as a witness by also signing the form. Thereafter, CLEM, his attorney, Detective Bisceglia, and your affiant entered a motor vehicle. The interview that began at the Worcester Police Department and ended in the motor vehicle was audio recorded.

23. CLEM provided directions to a residence located in Millville, Massachusetts.[16] CLEM advised that when he arrived, he parked down the street by the line of bushes at the intersection. He then texted a minor female (JV-3), whom he identified by first name, who is now approximately sixteen (16) or seventeen (17) years old. CLEM provided the location of the contact number for JV-3 in the contacts of his cell phone. CLEM took JV-3 to the Econolodge located on Route 146 in Sutton, Massachusetts on two or three occasions during the late fall or early winter time frame of 2014 when she was sixteen (16) or seventeen (17) years old and engaged in sex with her. CLEM paid for the room at the Econolodge with his Southbridge

---

[15] CLEM provided the street name and approximate location of the residence in Worcester. The identity of JV-5 is known to your affiant.

[16] The specific address in Millville, Massachusetts was identified by CLEM and is known to your affiant.

9

Savings card. CLEM met with JV-3 most recently in approximately February 2015, but they did not engage in any sexual contact during their most recent meeting.[17]

24.     On April 1, 2015, JV-3 was located at her residence in Millville, Massachusetts, by Detective Bisceglia, Trooper Prescott, and your affiant. A Sexual Assault Intervention Network (SAIN) interview of JV-3 was scheduled for April 9, 2015, at the Worcester County District Attorney's Office, Child Advocacy Center.

### Forensic Interview of JV-3

25.     On April 9, 2015, JV-3 was interviewed by Juvenile Forensic Interviewer Gina Melendez at the Worcester County District Attorney's Office. The interview was audio and video recorded and observed by Detective Bisceglia and your affiant. JV-3 stated that she began communicating with an individual who identified himself as "Mark" online via My Yearbook (which is now MeetMe) when she was in the 8th grade.[18] JV-3 told Mark that she was in the 8th grade and he identified himself as being nineteen (19) years-old. While in the 8th grade, JV-3 video chatted with Mark via Skype. During the chat session, Mark asked her to remove her clothes and touch herself. JV-3 complied by removing her clothing and masturbating. During

---

[17]    CLEM provided directions to two other addresses on March 26, 2015. CLEM provided directions to a triple decker styled residence in Worcester, Massachusetts. He advised that he met the minor female (JV-5), who resided in the second floor apartment, via Kik. He later met the minor female at her residence on two occasions and engaged in oral and vaginal intercourse with her. As previously described, the identity of JV-5 is known to your affiant and it has been determined that she had not attained the age of sixteen (16) at the time CLEM met with her. CLEM also provided directions to a residence in Boxborough, Massachusetts. He advised that he met a minor female, who lived at the residence, via MeetMe and later switched their communication over to Kik (JV-4). CLEM later met JV-4 at an intersection in front of her house and took her to the Holiday Inn in Boxborough, Massachusetts to have sexual intercourse with her on two occasions. As previously described, the identity of JV-4 is known to your affiant and it has been determined that she was sixteen (16) years-old at the time CLEM met with her.

[18]    JV-3 would have turned fourteen (14) years old in the spring of her 8th grade year.

the chat sessions, JV-3 could see Mark's face, naked penis, and him masturbating. JV-3 and Mark also exchanged sexually explicit images via text message. Mark also asked her to meet up with him and to have sex with him. When JV-3 said she did not want to have sex with him, he replied, "we'll see."

26. During the summer between 8th and 9th grade,[19] Mark picked up JV-3 at her residence in the area of Northbridge, Massachusetts. He drove JV-3 to a yellow house located in either Auburn or Worcester, Massachusetts. When they arrived, Mark brought her up to a bedroom and pushed her onto the bed. When JV-3 said she did not want to have sex with him, he placed his hands on her throat and began to strangle her. JV-3 stated that it was difficult to breathe and it hurt her. When she pulled his hands away from her throat, he just pushed on it. As a result, JV-3 decided it would be dumb to resist and did not fight anymore. Mark inserted his tongue and penis into JV-3's vagina, and ejaculated onto her stomach. Mark and JV-3 showered together and he drove her back to her residence in the Northbridge area.

27. At the conclusion of the interview, your affiant showed JV-3 a photographic array containing eight (8) photographs. JV-3 identified the photograph depicting CLEM as the individual she knew as Mark with a one-hundred (100) percent degree of certainty.

28. The yellow house described by JV-3 was determined by Detective Bisceglia to possibly be the residence of CLEM's ex-girlfriend, located on Grove Street in Worcester, Massachusetts.[20] On April 13, 2015, Detective Bisceglia and your affiant obtained verbal

---

[19] The summer between JV-3's 8th and 9th grade years has been determined to be the summer of 2012 when JV-3 was fourteen (14) years old.

[20] The identity of CLEM's ex-girlfriend and the specific address is known to your affiant. CLEM was stopped by the Barre Police Department in a motor vehicle in that was registered to a female (CLEM's ex-girlfriend) who resided at the location on Grove Street in Worcester,

consent from CLEM's ex-girlfriend's current fiancé to take photographs of the residence for identification purposes. Thereafter, your affiant took a total of fifteen (15) digital photographs of the interior and exterior of the residence. On April 14, 2015, JV-3 was shown printouts of the aforementioned digital photographs of the residence located on Grove Street in Worcester, Massachusetts. Specifically, JV-3 identified the front bedroom with red-colored walls as being the room where the sexual contact with CLEM took place. JV-3 also positively identified the front walk, the staircase between the first and second floors, the wet bar area leading to the kitchen, the kitchen, and the upstairs bathroom.

### Forensic Interview of JV-1

29.     On May 21, 2015, a SAIN interview of JV-1 was conducted by forensic interviewer Gina Melendez at the Worcester County District Attorney's Office, Child Advocacy Center. The interview was audio and video recorded and observed by Detective Bisceglia and your affiant. JV-1 stated that when she was fifteen (15) years-old she began communicating via Kik with an individual who identified himself as "Matt" in the fall of 2014. JV-1 told Matt that she was fifteen (15) or sixteen (16) and he told her that he was in his 20s and in the Army. Eventually, Matt asked JV-1 for naked photographs of herself. She complied by sending images via Kik depicting her naked breasts and of her naked body from her neck to her knees. He responded by telling JV-1 that she was really pretty and he was really horny every time he looked at them. Matt also asked JV-1 to send videos, but she did not comply with his request. Matt asked JV-1 to send him pictures of her vagina. She complied, via Kik, and he thanked her. Matt asked JV-1 to send him pictures with her fingers on her vagina. JV-1 complied and sent the images via Kik. JV-1 took and sent the images to Matt with her iPod and iPhone. Matt sent JV-

Massachusetts.

1 pictures, purportedly of him, in a camouflaged Army uniform and a few pictures of him in a car. On one occasion, Matt sent JV-1 a picture of his penis. JV-1 received the images from Matt on her iPhone.

30.     Matt repeatedly asked JV-1 to sneak out of her house and meet up with him. On at least one occasion, JV-1 told Matt that she was in Worcester and he told her he would be close by. He told JV-1 to shut off the alarm and sneak out her window. On at least one occasion, Matt told JV-1 he would rent a hotel room for the purpose of having sex with her. When JV-1 refused to meet him, Matt would call her names and said he would not talk to her. JV-1 stopped communicating with Matt in approximately October or November 2014.[21]

## CONCLUSION

31.     Based upon the facts described in Paragraphs 8 through 30, there is probable cause to believe that CLEM committed the offense of production of child pornography of JV-1 in or about October 2014, and of JV-3 in or about 2012. In addition, there is probable cause to believe that CLEM received images of child pornography on his computer and/or mobile device in or about October 2014. Finally, there is probable cause to believe that CLEM enticed JV-3 and attempted to entice JV-1, neither of whom had attained the age of 16 years, to engage in sexual activity for which any person can be charged with a criminal offense.[22]

---

[21]     JV-1 was fifteen (15) years-old for the duration of her correspondence with Matt.

[22]     For instance, Massachusetts General Law, Chapter 265, Section 23A, criminalizes the following conduct: "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under 16 years of age and . . . (b) there exists more than a 10 year age difference between the defendant and the victim where the victim is between the age of 12 and 16 years of age . . . ."

32. Based on the foregoing, I respectfully submit that there is probable cause to believe that CLEM has committed the Subject Offenses. WHEREFORE, your affiant requests that a warrant issue for the arrest of CLEM.

_____
JENNIFER L. WEIDLICH
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 8th day of June 2015.

_____
Honorable David H. Hennessy
United States Magistrate Judge

I have reviewed the image files referenced above and find probable cause to believe they depict minors engaged in sexually explicit conduct. The U.S. Attorney's Office shall maintain these images for the duration of this case, including any appeals.

_____
Honorable David H. Hennessy
United States Magistrate Judge