1

1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4     United States of America,)
                      Plaintiff, )
5                                )
                                 )
6     vs.                        )    Case No. 16cr40008-TSH
                                 )
7                                )
      Matthew Clem,              )
8                  Defendant. )

9

10    BEFORE:  The Honorable Timothy S. Hillman

11

12                           Rule 11

13

14

15                            United States District Court
                              Courtroom No. 2
16                            595 Main Street
                              Worcester, Massachusetts
17                            April 13, 2016

18

19

20

21

22

23                    Marianne Kusa-Ryll, RDR, CRR
                         Official Court Reporter
                      United States District Court
24                     595 Main Street, Room 514A
                        Worcester, MA 01608-2093
25                   508-929-3399 justicehill@aol.com
                 Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    United States Attorney's Office
     Mark J. Grady, Assistant United States Attorney
3    Donohue Federal Building & Courthouse
     595 Main Street, Suite 206
4    Worcester, Massachusetts  01608
     on behalf of the Government
5
     Geoffrey G. Nathan, Esquire
6    132 Boylston Street
     Boston, Massachusetts 02116
7    on behalf of the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2               (The following proceedings were held in open court

3     before the Honorable Timothy S. Hillman, United States District

4     Judge, United States District Court, District of Massachusetts,

5     at the Donohue Federal Building & United States Courthouse,

6     595 Main Street, Worcester, Massachusetts, on April 13, 2016.)

7               THE CLERK:  All rise.  The United States District

8     Court for the District of Massachusetts is now in session, the

9     Honorable Timothy Hillman preceding.  Please be seated.

03:09:25PM 10          Criminal 16-4008 [sic], will now -- United States

11     versus Matthew Clem will now be heard before this Court.

12               Will counsel please identify themselves for the

13     record.

14               MR. GRADY:  Good afternoon, your Honor.  Mark Grady on

03:09:38PM 15     behalf of the United States.

16               THE COURT:  Good afternoon, Mr. Grady.

17               MR. NATHAN:  Good afternoon.  Geoffrey Nathan from

18     Boston for Matthew Clem.

19               THE COURT:  Good to see you again, Mr. Nathan.

03:09:50PM 20          MR. NATHAN:  Thank you.

21               THE COURT:  And good to see you, Mr. Clem.

22               THE DEFENDANT:  Good to see you, sir.

23               THE COURT:  Mr. Nathan, for the record, why are we

24     here today?

03:09:55PM 25          MR. NATHAN:  Your Honor, having evaluated the case

1    with Mr. Clem, he would like to change his plea today.

2         THE COURT:  All right.  Mr. Clem, what I'm going to

3    ask you to do is come up to the witness stand here; and before

4    you sit down, just have -- raise your hand so that Mr. Alba can

03:10:11PM 5    swear you in.

6                   MATTHEW CLEM, SWORN

7         THE CLERK:  Thank you.  You may be seated.

8         THE DEFENDANT:  Thank you.

9         THE COURT:  Mr. Clem, as you know, my name is Judge

03:10:28PM 10   Hillman.  I'm going to be asking you some questions this

11   afternoon in order to determine whether or not the guilty plea

12   that Attorney Nathan tells me you're prepared to make is being

13   made freely and voluntarily upon a factual basis containing all

14   of the essential elements of the crimes against you charged and

03:10:45PM 15   with full knowledge by you of the consequences to you of

16   pleading guilty.

17        If at any point during my questioning you want to take

18   a break, or you're confused, or you don't understand my

19   questions, please say so.

03:11:00PM 20        Also, if at any time you want to stop and consult with

21   counsel, you just say the word, and I'll let you do that.

22        Do you understand that?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Tell me your name and how old you are.

03:11:09PM 25        THE DEFENDANT:  Matthew Clem, 31.

1          THE COURT:  And, Mr. Clem, do you understand that you
2     are now under oath so that if you answer any of my questions
3     falsely you may later be subjected to another prosecution for
4     perjury or making a false statement?
03:11:23PM 5          THE DEFENDANT:  Yes, your Honor.
6          THE COURT:  Are -- how far did you go in school?
7          THE DEFENDANT:  High school, your Honor.
8          THE COURT:  And are you able to speak and understand
9     English?
03:11:31PM 10          THE DEFENDANT:  Yes, your Honor.
11          THE COURT:  Are you a citizen of the United States?
12          THE DEFENDANT:  Yes, your Honor.
13          THE COURT:  Are you presently being treated or have
14     you recently been treated for any mental illness or psychiatric
03:11:44PM 15     or psychological problem of any kind?
16          THE DEFENDANT:  Currently, yes, your Honor.
17          THE COURT:  And are you receiving medicine as part of
18     your treatment regimen?
19          THE DEFENDANT:  Yes, your Honor.
03:11:52PM 20          THE COURT:  And do you take that medicine on a daily
21     basis?
22          THE DEFENDANT:  Yes.
23          THE COURT:  How often?
24          THE DEFENDANT:  Three times a day.
03:11:57PM 25          THE COURT:  And have you taken it according to when

1      you were supposed to take it today?

2             THE DEFENDANT:  Yes, your Honor.

3             THE COURT:  And if you take that medicine does it in

4      any way affect your ability to think clearly?

03:12:07PM 5             THE DEFENDANT:  No, your Honor.

6             THE COURT:  Okay.  Because of the treatment you're

7      receiving, are you confused in any way about anything that's

8      going on here today?

9             THE DEFENDANT:  No, your Honor.

03:12:17PM 10             THE COURT:  Okay.  Are you presently being treated or

11      have you recently been treated for any drug addiction or drug

12      problem of any kind?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  As you sit here today, are you under the

03:12:31PM 15      influence of any medication, prescription or otherwise, or any

16      drug or alcoholic beverage of any kind?

17             THE DEFENDANT:  Prescription, yes, your Honor.

18             THE COURT:  Okay.  And that's the prescription that we

19      just talked about?

03:12:42PM 20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Okay.  And have you received a copy of the

22      Information, the Superseding Information actually, that was

23      filed in this case, in other words, the written charges against

24      you?

03:12:53PM 25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And do you -- have you had enough time to

2     go over these charges with Attorney Nathan?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And you understand that this Superseding

03:13:05PM 5     Information charges you with three counts of sexual

6     exploitation of a child, and this is alleged to be in violation

7     of United States Code Section 2251(a).

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

03:13:20PM 10          THE COURT:  All right.  And, Attorney Nathan, have you

11     communicated all formal offers from the prosecution to accept

12     the term under pleas -- under terms and conditions that may be

13     acceptable to the defendant?

14          THE DEFENDANT:  Yes, your Honor.  I have negotiated

03:13:37PM 15     several drafts of a plea agreement with AUSA Grady.  I have

16     duly both brought those to the Wyatt detention facility in

17     Rhode Island.  I have reviewed them with Mr. Clem.  I have also

18     mailed all pertinent documents relative to this matter to my

19     client for him to review in those circumstances in which my

03:14:00PM 20     client had asked me not to come to the jail to see him

21     personally.

22          THE COURT:  All right.  Thank you.

23          MR. NATHAN:  There are reasons for that.

24          THE COURT:  All right.  We can -- is there a reason

03:14:13PM 25     that we need to get into that now, or is that something that we

          1    should talk about?

          2         MR. NATHAN:  It would be only if after the proceeding

          3    your Honor is interested to know as to why a client is in

          4    custody would tell his attorney, look, just mail it to me, Mr.

03:14:34PM 5    Nathan.  Let me call you collect.  I don't want you coming down

          6    here right now.  It wouldn't affect the Rule 11.

          7         THE COURT:  Okay.

          8         MR. NATHAN:  But it's something that the judicial

          9    system should be aware of.

03:14:45PM 10        THE COURT:  Okay.  Thank you.  Then we will -- we will

         11    talk.  Thank you.

         12         And, Mr. Clem, have you and Attorney Nathan discussed

         13    the case rights that you have and the possible defenses to

         14    these charges and the consequences to you of pleading guilty?

03:15:04PM 15        THE DEFENDANT:  Yes, your Honor.

         16         THE COURT:  And have you and Attorney Nathan discussed

         17    the trial value that the -- the trial options that the facts of

         18    this case present?

         19         THE DEFENDANT:  Yes, your Honor.

03:15:15PM 20        THE COURT:  And are you satisfied with Attorney

         21    Nathan's representation and the advice that he has given you?

         22         THE DEFENDANT:  Yes, I am, your Honor.

         23         THE COURT:  Do you have any complaints about the

         24    manner of his representation?

03:15:24PM 25        THE DEFENDANT:  No, your Honor.

1      THE COURT:  Are you pleading guilty because you are

2  guilty and for no other reason?

3      THE DEFENDANT:  Yes, your Honor.

4      THE COURT:  And I have been handed a document that is

03:15:35PM 5  dated today and is entitled "Waiver of an Indictment," and it

6  bears your signature and Attorney Nathan's.

7      Did you sign that today?

8      THE DEFENDANT:  Yes, your Honor.

9      THE COURT:  And I want to go over this with you, but

03:15:50PM 10  before I do, have you -- did you talk with Attorney Nathan

11  before you signed it?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  And did he explain to you what this waiver

14  of indictment was all about?

03:16:00PM 15      THE DEFENDANT:  Yes, your Honor.

16      THE COURT:  Do you have any questions about it?

17      THE DEFENDANT:  No, your Honor.

18      THE COURT:  All right.  So let me also explain to you

19  what this is, and then I'm going to -- I too am going to ask

03:16:11PM 20  you some questions.

21      So you have a constitutional right to be charged by an

22  indictment of a grand jury, but as you're asking me to do here

23  today, you can waive that right and consent to being charged by

24  what's called an Information by the United States Attorney.

03:16:25PM 25  And so instead of an indictment, these felony charges have been

1    brought by the United States Attorney filing this Information

2    with the court.

3           However, this can't happen unless you waive your right

4    to indictment.  You cannot be charged with a felony unless you

03:16:43PM 5    either waive your right to indictment or the United States

6    Attorney presents its case against you to a grand jury and asks

7    the grand jury to indict you.  And in order for that to happen,

8    the grand jury must find that there's probable cause to believe

9    that a crime was committed and probable cause to believe that

03:17:01PM 10    you committed that crime.

11           Now, that means that the grand jury might indict you

12    or it might not.  And the grand jury is composed of at least

13    16, but not more than 23 people; and in order for you to be

14    indicted at least 12 of those grand jurors had to believe that

03:17:21PM 15    there's probable cause that you committed a crime.  And again,

16    that means they might or might not indict you.

17           If you waive your right to indictment like you're

18    asking me to do here today, the case will proceed against you

19    as though you had been indicted.  So let me ask you first, do

03:17:38PM 20    you understand your right to have an indictment by a grand

21    jury?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And have you discussed waiving your right

24    to indictment with Attorney Nathan?

03:17:46PM 25           THE DEFENDANT:  Yes, I have, your Honor.

1          THE COURT:  Have any threats or promises been made to

2     induce you to waive indictment?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Do you wish to waive your right to

03:17:54PM 5     indictment by a grand jury?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  Attorney Nathan, is there any

8     reason that you can think of why I should not take this waiver?

9          MR. NATHAN:  No.

03:18:03PM 10          THE COURT:  All right.  I find that Mr. Clem's waiver

11     is knowingly and voluntarily and intelligently made, and I

12     therefore accept it.

13          Rob.

14          (Document handed to the clerk.)

03:18:16PM 15          THE COURT:  Now, I also have a document that you

16     signed back in November -- at least it's dated in November, and

17     it appears that you signed it in February.  It's called a plea

18     agreement.

19          Do you recall signing that?

03:18:33PM 20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And I apologize if you can't see it from

22     all the way over there.  I can bring it over to you.

23          Do you have it in front of you?

24          THE DEFENDANT:  I have a copy, your Honor.  Thank you.

03:18:44PM 25          THE COURT:  Okay.  Is that your signature on the last

1    page?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  All right.  And did you have an

4    opportunity to read that agreement and discuss it with Attorney

03:18:51PM 5    Nathan before you signed it?

6         THE DEFENDANT:  I did, your Honor.

7         THE COURT:  Does it contain all of the terms to which

8    you've agreed?

9         THE DEFENDANT:  Yes, your Honor.

03:18:57PM 10        THE COURT:  Do you understand the terms of the plea

11   agreement?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  Is this the only agreement that you have

14   with the United States Government?

03:19:04PM 15        THE DEFENDANT:  Yes, your Honor.

16        THE COURT:  Has anybody made any promises or

17   assurances to you that are not contained in the agreement?

18        THE DEFENDANT:  No, your Honor.

19        THE COURT:  Has anybody threatened you or promised you

03:19:16PM 20   anything to get you to accept this agreement?

21        THE DEFENDANT:  No, your Honor.

22        THE COURT:  And as I understand the terms of the

23   agreement, this is a (b) plea, Mr. Grady?

24        MR. GRADY:  Yes, your Honor.

03:19:28PM 25        THE COURT:  So while I put a great deal of faith in

1   the negotiations between the lawyers, and both of these lawyers

2   have appeared before me before, so there is a level of trust

3   that I have with them.  You should understand that what they

4   are making to me is only a recommendation about how you should

03:19:46PM 5   be punished.  There are different recommendations within a

6   range, but you understand that I am not obligated to accept

7   either the government's recommendation or Mr. Nathan's, if I

8   don't think it's fair.

9           Do you understand that?

03:19:58PM 10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  And that I -- if I don't think it's fair,

12   I could impose a sentence that is more severe than what is

13   recommended, and you will not be able to withdraw your plea.

14           Do you understand that?

03:20:09PM 15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Now, you understand that the crimes that

17   you are pleading guilty to are felonies?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  And that if I accept your plea, you will

03:20:20PM 20   be judged guilty of those offenses and you will probably

21   use -- lose valuable civil rights, which includes the right to

22   vote, the right to serve on a jury, the right to hold public

23   office, and the right to possess a gun or any kind of firearm.

24           Do you understand that?

03:20:36PM 25           THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Mr. Grady, let's start, please, with the

2     maximum punishment that the law provides.

3          MR. GRADY:  Yes, your Honor.  As to each of the counts

4     of the Information, the defendant faces a mandatory minimum

03:20:47PM 5     term of imprisonment of 15 years up to a maximum term of

6     30 years, a term of supervised release of five years up to a

7     term of life, a fine of up to $250,000, a special assessment of

8     $100 as to each count, restitution and forfeiture to the extent

9     alleged in the Information.

03:21:06PM 10          THE COURT:  And there was a -- there was a preliminary

11     motion for a preliminary order?

12          MR. GRADY:  I don't believe there is at this point,

13     your Honor.  I think many of the items -- there was originally

14     a state arrest, and many of the items may have been seized in

03:21:21PM 15     that matter.

16          THE COURT:  Were the peripherals seized?

17          MR. GRADY:  The -- there were other computers and

18     other items seized.  They are identified in the Information as

19     materials seized from the defendant at the time of the

03:21:31PM 20     execution of the state search warrant.  They are identified in

21     the Information.

22          THE COURT:  And what's the situation with the

23     restitution?

24          MR. GRADY:  With respect to restitution, I am

03:21:39PM 25     currently unaware of any; however, given the nature of the

1    crime it is certainly possible that the victims may identify

2    some restitution, which the government would seek at

3    sentencing.

4           THE COURT:  Thank you.

03:21:47PM 5    All right.  Mr. Clem, I'm not saying this is what is

6    going to happen, but you should understand that I will have the

7    power to give you a term of imprisonment of up to 90 years,

8    that's 30 years on each count, and three counts.  In addition,

9    I will have the power to give you a term of supervised release

03:22:04PM 10   of up to life and a fine of up to $750,000.  And in addition to

11   everything else you're going to be required to pay a special

12   assessment of $100 on each count for a total of $300, and you

13   may be ordered to pay restitution in an amount that will be

14   determined at a restitution hearing.

03:22:27PM 15          Do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Now, I know that you and Attorney Nathan

18   have no doubt talked in detail about the sentencing guidelines,

19   and I too am obligated to speak with you about them.  The

03:22:41PM 20   sentencing guidelines have been issued by the Sentencing

21   Commission for judges like myself to follow when attempting to

22   consider what the appropriate sentence is in a criminal case.

23   They're not mandatory, which means I don't have to follow them,

24   but I do have to consider them in arriving at -- I do have to

03:22:58PM 25   consider them in arriving at your sentence.

1            So I'm going to first you ask have you and Attorney

2     Nathan talked about the sentencing guidelines and how they

3     might affect your case?

4            THE DEFENDANT:  Yes, your Honor.

03:23:08PM 5            THE COURT:  And do you understand that I'm not going

6     to be able to determine your guideline sentence until after the

7     probation office has prepared a presentence report, which will

8     contain information about you and your criminal history, and

9     the crimes that you are alleged to have committed, and that

03:23:25PM 10    report will also contain a recommended application of the

11    sentencing guidelines.  And both you and the government will

12    have a chance to look at that report in draft form, and you'll

13    have a chance to challenge any facts contained in it, or

14    correct any facts that are wrong, and to challenge the

03:23:41PM 15    application of the sentencing guidelines.

16            Do you understand that?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  And do you understand that although I'm

19    not required to follow the sentencing guidelines, I am required

03:23:51PM 20    to determine what your guideline sentence is before I impose

21    sentence upon you.

22            Do you understand that?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Do you understand that while I may have

03:23:59PM 25    authority to depart from the guideline sentences, and that

1    means that I may be able to give you a sentence that is more

2    severe than what the guidelines call for, or conversely less

3    severe than what the guidelines call for.

4         Do you understand that?

03:24:15PM  5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  And that you will not be permitted to

7    withdraw your plea of guilty because your sentence is longer

8    than you expected or different than you expected or because

9    it's different from the sentence that Attorney Nathan may have

03:24:28PM 10    predicted that you would get.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  All right.  And any victim of your crime

14    has the right to participate in the sentencing proceeding

03:24:38PM 15    either in person or in writing.

16         Do you understand that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And finally, under the sentencing -- I'm

19    sorry -- under the plea agreement, you have significantly

03:24:50PM 20    reduced your ability to appeal this case.  Frankly, your --

21    your rights of appeal have been limited to the -- to the extent

22    that you may only appeal the -- whether or not Attorney

23    Nathan's representation of you fell below measurable standards.

24         Do you understand that?

03:25:12PM 25         THE DEFENDANT:  Yes, your Honor.

1          MR. GRADY:  Your Honor, the defendant has also

2      reserved the right to appeal any claim of prosecutorial

3      misconduct or a sentence in excess of 252 months.

4          THE COURT:  Thank you.

03:25:22PM 5          Do you understand that as well?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Thank you, Mr. Grady.

8          All right.  We have one final set of rights I want to

9      talk to you about, and then we will proceed to take the plea.

03:25:32PM 10     When you plead guilty you give up -- you give up your right to

11     a trial and more importantly a trial by a jury.

12          And if you -- if you had elected to go to trial, and

13     you can still elect to go to trial, the government -- you would

14     be presumed to be innocent as you are right now -- and the

03:25:50PM 15     government would have the burden of proving its case against

16     you beyond a reasonable doubt, and that means the government

17     would have to prove every element of the -- of the crime

18     charged against you beyond a reasonable doubt to the

19     satisfaction of all 12 jurors, and that means that the jury

03:26:08PM 20     would have to be unanimous in order for you to be convicted.

21     It would also have to be unanimous in order for you to be

22     acquitted.  But the government -- when you plead guilty, you

23     give up this presumption of innocence, and the government does

24     not have to prove its case beyond a reasonable doubt to the

03:26:24PM 25     satisfaction of all the jurors.

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  You're also giving up the right to

4     the -- have the considerable assistance of Attorney Nathan, who

03:26:34PM 5     would confront and examine -- cross-examine the government's

6     witnesses.  In addition, Attorney Nathan could compel witnesses

7     to come to court and testify on your behalf if you thought that

8     these witnesses would be important.

9          Do you understand you're giving up that right as well?

03:26:50PM 10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And finally, you have what is called a

12     privilege against self-incrimination; and that means that if

13     you went to trial, you could testify if you want, but you also

14     have this privilege against self-incrimination; and if you

03:27:03PM 15     chose not to testify, I would instruct the jurors that you --

16     not only do you have a constitutional right not to testify, but

17     that the jurors are not to think anything bad about either you

18     or your case because of this right.  When you plead guilty, you

19     give up that right, and you must admit you did what the

03:27:21PM 20     government says you did in order for this plea to be

21     successful.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  So do you understand that by pleading

03:27:28PM 25     guilty here today, if I accept your plea, there will be no

1   trial, and you will have waived or given up your right to a

2   trial and the rights that come with a trial that I have just

3   described to you?

4          THE DEFENDANT:  Yes, your Honor.

03:27:40PM 5          THE COURT:  All right.  Mr. Grady, let's start please

6   with the elements of the offense charged that the government

7   would need to prove in order to convict the defendant.

8          MR. GRADY:  Yes, your Honor.  As to all counts of the

9   superseding information, the government must establish beyond a

03:27:54PM 10  reasonable doubt that the defendant employed, used, persuaded,

11  induced, enticed, or coerced a minor to engage in sexually

12  explicit conduct for the purpose of producing a visual

13  depiction of the conduct.  The minor was a real person who was

14  less than 18 years old, and either the defendant knew or had

03:28:11PM 15  reason to know the visual depiction would be mailed or

16  transported in interstate or foreign commerce; the visual

17  depiction was produced using materials that had been mailed,

18  shipped, transported in interstate or foreign commerce by any

19  means, including by computer, or the visual depiction was

03:28:27PM 20  mailed or actually transported in interstate or foreign

21  commerce.

22          THE COURT:  Thank you.

23          So, Mr. Clem, you understand that if you went to trial

24  those are the elements of the crimes against you charged.  Each

03:28:39PM 25  of those elements the government would have to prove beyond a

1    reasonable doubt to the satisfaction of all 12 jurors before

2    you would have been convicted.

3            Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

03:28:50PM 5    THE COURT:  All right.  Mr. Grady, if you would

6    please, the factual basis for the plea, that is, what the

7    government would be prepared to prove if this case were to go

8    to trial.

9            MR. GRADY:  Yes, your Honor.  On October 24th of 2014,

03:29:02PM 10   a detective of the Worcester Police Department interviewed a

11   minor female identified in the Information as Juvenile Victim

12   No. 1, who was then 15 years old.  Juvenile Victim 1 reported

13   that she had been corresponding with an individual via Kik

14   Messenger, who was utilizing the user name usmcmrc1166, and who

03:29:23PM 15   had identified himself as "Matt."  Kik Messenger is an

16   internet-based instant messaging application for mobile devices

17   such as smartphones.

18           JV-1 utilized Kik to communicate with Matt in

19   approximately the beginning of September 2014 through

03:29:38PM 20   mid-to-late October 2014 during which time JV-1 was 15 years

21   old.

22           During the chats, JV-1 told usmcmrc that she was 15

23   and a sophomore in high school.  During the chats usmcmrc

24   eventually asked JV-1 to send him nude photographs of herself.

03:29:56PM 25   JV-1 complied and sent images depicting her naked breasts and

1   genitalia with her iPod and iPhone.  JV-1 received one image

2   from usmcmrc, that according to Matt depicted his erect penis.

3        Kik Interactive provided authorities with the 30 day

4   internet protocol address history associated with the account

03:30:19PM 5   usmcmrc1166.  The IP address was found to have been assigned

6   during the time communications were occurring with JV-1 to Gary

7   Fuller of Park Street, North Brookfield, Massachusetts.  Gary

8   Fuller is Matthew Clem's father-in-law.  And Clem was residing

9   at that address at the time.

03:30:33PM 10        A state search warrant was obtained and executed on

11   March 13th, 2015, at the residence in North Brookfield.

12        Clem was present at the residence and was voluntarily

13   escorted to the North Brookfield Police Department to be

14   interviewed.  Upon arrival at the Police Department, Clem was

03:30:47PM 15   advised of and executed a written waiver of his *Miranda* rights.

16        During a subsequent audio/video recorded confession,

17   Clem told officers that he had used Match, Kik, and MeetMe, all

18   social media applications, to meet women and girls via the

19   internet.  Clem claimed that he primarily searched for females

03:31:06PM 20   who were 14 to 21 years old on MeetMe.  He would first pose as

21   a younger individual, age 15 to 16 years old.  During chats he

22   would then propose the minor female meet up with his "cousin,"

23   a 19-year-old Marine named Matt or Mark.  This Marine, however,

24   was Clem himself.

03:31:22PM 25        Clem admitted that he used the Kik username

1    usmcmrc1166.  Clem further admitted that he has the Kik

2    application on his iPhone and admitted that he had received

3    nude and clothed images via the application from minor females

4    as young as 14 years old.

03:31:37PM 5          Clem told officers he lied about his identity online,

6    that he sent images of his real face and genitals to

7    individuals, including to minors, via Kik.  Clem also stated

8    that he had found pictures of other individuals in military

9    uniforms from Google and claimed the pictures were of himself.

03:31:52PM 10   Clem never served in the military but believed the pictures

11   made him seem more attractive to the minors.  Clem also said he

12   told girls he had a cousin in the Marines which was also false,

13   as this was a ruse merely to introduce himself.

14          Clem admitted that he had met girls in person that he

03:32:06PM 15   had initially met online.  Clem admitted that he had met minors

16   as young as 14 years old for the purpose of engaging in sexual

17   intercourse and oral sex and had, in fact, engaged in oral and

18   vaginal intercourse with minors under the age of 16.

19          Clem admitted that he had been meeting with the minor

03:32:20PM 20   female identified in the Information as Juvenile Victim No. 3

21   for approximately one and a half years.  Clem admitted that he

22   had engaged in sexual intercourse with JV-3 in his car at the

23   Econolodge in Sutton.  JV-3 was approximately 14 years old at

24   the first time Clem met her.

03:32:36PM 25          Clem also stated that he had met the minor female

1    identified in the Information as Juvenile Victim 5, who was

2    approximately 15 or 16 years old, at the minor's second floor

3    apartment residence in Worcester and had engaged in sexual

4    intercourse with her.  Clem identified the minor as living on a

03:32:51PM 5    particular road in Worcester, which was, in fact, the address

6    of JV-5.

7         On March 26th, 2015, Clem was accompanied to the

8    Worcester Police Department by his attorney.  During the

9    interview Clem voluntarily identified locations where he had

03:33:03PM 10    picked up minors.

11        Clem first provided directions to JV-3's home address.

12    Clem explained that he had engaged in sexual intercourse with

13    the minor female residing at that address.

14        Clem also provided directions to a triple decker

03:33:16PM 15    styled residence on a road in Worcester, Massachusetts, which

16    was the address of Juvenile Victim 5.  He advised that

17    the -- he met a minor female who resided in the second floor

18    apartment via Kik.  He later met the minor female at her

19    residence on two occasions and engaged in oral and vaginal

03:33:31PM 20    intercourse with her.  JV-5 had not attained the age of 16 at

21    the time that Clem engaged in sex with her.

22        At trial the government expects that Juvenile Victim 1

23    would testify that when she was 15 years old she began

24    communicating via Kik with an individual identifying himself in

03:33:47PM 25    Matt -- as Matt.  JV-1 told Matt that she was 15 or 16 years

1   old, and he told her that he was in his 20s and in the Army.

2   During chats, Matt asked JV-1 for naked photographs.   JV-1

3   would testify she had complied by sending images depicting her

4   breasts and of her naked body.   Matt responded to these photos

03:34:05PM 5   by telling JV-1 that she was very pretty and that he was really

6   horny every time he looked at the photos.   Matt further asked

7   JV-1 to send him pictures of her vagina, and she complied.

8   Matt asked JV-1 to send him pictures with her fingers on her

9   vagina.   She complied and sent the images via Kik.   JV-1 took

03:34:23PM 10   the images with her iPod and iPhone.   Matt sent a picture

11   purportedly of him in a camouflaged Army uniform and a few

12   pictures of him in a car.   On one occasion Matt had sent a

13   picture of his penis.   JV-1 received the images from Matt on

14   her iPhone.

03:34:37PM 15        JV-1 would further testify that Matt repeatedly asked

16   JV-1 to sneak out of her house and meet up with him.   On at

17   least one occasion, JV-1 told Matt that she was in Worcester,

18   and he told her he would be close by.   Matt also told JV-1 he

19   would a rent a hotel room for the purpose of engaging in sex

03:34:53PM 20   with her.

21        JV-1 stopped communicating with Matt in approximately

22   October or November of 2014.

23        Amongst the items seized from Clem at the time of the

24   execution of the search warrant was an iPhone belonging to

03:35:06PM 25   Clem.   Kik chats between JV-1 and Clem were recovered from

1   Clem's iPhone 6.  These chats were recovered from amongst well

2   over 1,000 separate chats in which Clem solicited images from

3   individuals, many of whom are suspected to be underage or minor

4   females.

03:35:21PM 5        The portion of the chats with JV-1 recovered spanned

6   from October 14th, 2014, to October 22nd, 2014.  In chats on

7   October 14th, 2014, Clem asked that JV-1 send a number of

8   pictures.  He writes, among other things, "How bad do you want

9   my cock" and requests an image stating, "Show me where you want

03:35:41PM 10  it."  In response, JV-1 sent a photo of her vagina.  Clem

11   further wrote, "Spread your pussy wide open for me" and "Let me

12   see how wet you are."  During that same chat, in response to a

13   further text in which Clem writes, "Spread your pussy open for

14   me."  JV-1 sent a photograph of her vagina with her fingers

03:36:02PM 15  spreading the labia.  Clem responded, "Wider babe I want to see

16   how fucking wet that pussy is for my cock."  Within ten

17   minutes, JV-1 sent another photo depicting her vagina with her

18   fingers spreading the labia.

19        Clem solicited other photos, nude, directing what JV-1

03:36:18PM 20  was to wear and how she was to pose.  This included directing

21   JV-1 to pose "doggie style and take a pic."

22        On October 15th Clem wrote, "I'm going to come get you

23   tonight" and that -- sorry -- "I'm going to come get you

24   tonight" and that, "Yeah, you need to sneak out."  Clem went

03:36:37PM 25  on, "Send me more sexy pics, show me how you want me to fuck

1    you."  And then "Please."  When JV-1 wrote, "I don't know what

2    other positions to send you," Clem wrote, "Send however you

3    want to be fucked," "Doggie but your pussy facing the mirror,"

4    and "Missionary."  JV-1 then took and sent photographs

03:36:58PM 5    lasciviously displaying her genitals in response to these

6    requests including a photograph of JV-1's buttocks and vagina

7    taken from behind.  After that -- receiving that picture, Clem

8    wrote, "Spread your pussy open in that position OMFG," I

9    believe to be an abbreviation for oh, my fucking God, and then

03:37:15PM 10   "Send a ton of different pics."  JV-1 then sent a photograph of

11   JV-1's buttocks and vagina, taken from behind, with her finger

12   spreading her labia.

13        Clem further requested and obtained approximately ten

14   additional photographs of JV-1 that would constitute child

03:37:31PM 15   pornography in that they involved the lascivious display of

16   genitals and/or depict JV-1 engaged in sexual acts on

17   October 15th, 2014.  Clem specifically solicited these images

18   writing, "Full body, how wet, different positions."  Another

19   quote, "More baby."  Another quote, "Show me how bad you

03:37:50PM 20   fucking want it."  New quote, "Show me how you -- "Show me how

21   fucking wet it is," "Lots of different pics of how wet you

22   are," and finally, "Including all the cream all over your

23   fingers."

24        With respect to the victim identified in the

03:38:05PM 25   information as Juvenile Victim 3, the government expects that

1    Juvenile Victim 3 would testify she began communicating with an

2    individual who identified himself as Mark via My Yearbook,

3    which is now MeetMe, when JV-2 was in the eighth grade.  JV-2

4    would have turned 14 years old in the spring of her eighth

03:38:23PM 5    grade year, 2012.  JV-2 said that she had initially begun

6    chatting with someone else, supposedly Mark's cousin, who then

7    introduced her to Mark.

8         JV-3 told Mark that she was in the eighth grade, and

9    Mark identified himself as being 19 years old.

03:38:36PM 10        While in the eighth grade, between September 2011 and

11    May 2012, JV-3 video chatted with Mark via Skype.  During the

12    Skype chats session, Mark asked her to remove her clothes and

13    touch herself.  JV-3 complied by removing her clothing and

14    masturbating.  During the chat sessions, JV-3 could see Mark's

03:38:55PM 15    face, naked penis, and see him masturbating.

16        Clem's prior phone, an iPhone 4, which was also seized

17    pursuant to a warrant, and seized by officers or agents,

18    contains a stored contact for JV-3's Skype account and for her

19    username.  It also has JV-3's cell phone number as a stored

03:39:12PM 20    contact.

21        JV-3 and Mark also exchanged sexually explicit images

22    via text message.  Mark also asked her to meet up with her and

23    have sex -- excuse me -- to meet up with him and have sex with

24    him.

03:39:23PM 25        During the summer between eighth and ninth grade, Mark

1    picked up JV-3 at her residence.  The summer -- the summer

2    between JV-3's eighth and ninth grade years has been determined

3    to be the summer of 2012, when JV-3 was 14 years old.  Clem

4    drove JV-3 to a yellow house located in either Auburn or

03:39:40PM 5    Worcester, Massachusetts.  When they arrived, Mark brought her

6    up to a bedroom and pushed her onto the bed and inserted his

7    tongue and penis into her vagina and ejaculated on her stomach.

8    Mark and JV-2 showered together, and she -- excuse me --

9    JV-3 -- and she drove back to her residence.

03:39:55PM 10           This yellow house was later identified by agents and

11   officers as a residence of one of Clem's former girlfriends

12   located in Worcester, Massachusetts.  On April 13th, 2015,

13   agents obtained consent from the owner to take photographs of

14   the residence for identification purposes.  Agents took a

03:40:10PM 15   series of digital photographs of the interior and exterior.  On

16   April 14th, JV-3 was shown the photographs and identified the

17   front bedroom with red-colored walls as being the room where

18   the sexual contact with Clem took place.  JV-3 also recognized

19   the front walk, the stairway between the first and second

03:40:25PM 20   floors, a wet bar area leading to the kitchen, the kitchen, and

21   an upstairs bathroom.

22           An agent has shown JV-3 a photographic array

23   containing eight photographs.  JV-3 identified the photograph

24   depicting this defendant as the individual she knew as Mark

03:40:38PM 25   with 100 percent degree of certainty.

1          Chats -- Kik Messenger chats with JV-3 were recovered

2     from the iPhone 6 seized from Matthew Clem and span from

3     June 24th, 2014, through September 9th, 2014.  In a chat on

4     June 27th, 2014, Clem wrote, "I just like making love to you."

03:40:57PM 5     And JV-3 responded, "That is not making love.  You fuck me like

6     I am a rag doll."  The chats also reflect that on July 2nd,

7     2014, JV-2 -- excuse me -- JV-3 proposed Skyping with Clem.

8     According to the content they did not video chat that day

9     because Clem could not get his microphone on the computer to

03:41:16PM 10     work.  During the chat, however, Clem asks, "What are you going

11     to do on Skype?"  "So can you play on cam?"  And finally asked,

12     "Aren't you wet?"  When JV-3 declined to Skype or video chat,

13     Clem wrote, "I want to see how wet you are."

14          Finally, on July 7th, 2014, Clem wrote, "I have always

03:41:37PM 15     wanted you, you know that."  And JV-3 responded, "But you can't

16     have me.  The age fucks it up."

17          The government expects finally with respect to the

18     minor identified as Juvenile Victim 5 in the Superseding

19     Information that Juvenile Victim 5 would testify that she had

03:41:55PM 20     met claim on MeetMe and later texted with him on Kik Messenger.

21     JV-5 reported that she told Clem she was 15 years old.  JV-5

22     would testify that Clem requested pictures from JV-5, and that

23     she had sent him pictures of her vagina.  JV-5 further reported

24     Clem came to her house to engage in intercourse with her when

03:42:12PM 25     she was 15 years old.

1        JV-5 has picked Clem's photo array -- photo out of an

2    eight person photo array.

3        Kik chats between Clem and JV-5 were forensically

4    recovered from Clem's iPhone 6, and these chats span first from

03:42:25PM 5    April 7th, 2014, to June 25th, 2014, and then from

6    September 16th, 2014, through March of 2015.

7        On April 7th, 2014, Clem wrote, among other things,

8    "Show me how bad you want it."  In response, JV-5 sent a photo

9    of her vagina, but the photo itself is dark and difficult to

03:42:44PM 10    make out.  Clem then wrote, "Too dark!  Spread it open for me."

11    In response, JV-5 sent a further photograph depicting her

12    vagina with the fingers spreading the labia.

13        On April 11th, 2015, Clem sent two photos of his erect

14    penis to JV-5 writing, "Send a few more babe."  "Full body

03:43:04PM 15    ones."  In response, JV-5 sent a full-nude image.  Clem wrote,

16    "Send more babe" and "I wanted to see how wet."  JV-5 sent a

17    photo of her vagina, fingers spreading the labia.  And Clem

18    wrote in response, "I want to pound that."

19        On April 13th, Clem wrote, "Show me how bad you want

03:43:24PM 20    me."  In response, JV-5 sent a photo of her vagina and wrote,

21    "Wet enough for you."  Clem responded, "Hard to tell.  Spread

22    it wide.  Spread it.  Spread it out for me.  Show me."  In

23    response, JV-5 sent a further picture of her vagina, fingers

24    spreading labia.

03:43:41PM 25        On May 6th, 2014, JV-3 wrote, "Yup just got out of the

shower."  Clem wrote in response, "let me are."  Then wrote

"see."  In response, JV-3 sent a nude photo -- excuse me --

JV-5.  Clem then wrote, "Show me how bad you want it."  And

JV-5 sent a photo of her vagina.  Clem responded, "Spread it

baby."  And JV-5 sent a further picture of her vagina.  Clem

then wrote, "Spread wide babe."  And JV-5 sent a third photo

fingers spreading the labia.  Clem then wrote, "A new one."

On October 5th, 2014, JV-5 sent Clem a photo of her

vagina being penetrated by a small blue object, possibly a sex

toy.  Clem wrote in response, "Show me more babe."  And "Show

me how wet you are."

Additional chats from February of 2015 discuss a

potential meeting to engage in intercourse.  During this

discussion with respect to a prior encounter between them, Clem

wrote, "I didn't cum inside you!  I came in my hand."

As to the interstate nexus, Kik Messenger transmits

texts, photographs, and video via the internet.  Skype

transmits messages and allows video chatting via the internet.

The evidence would further show that these communications --

thus, the evidence would show that these communications were

transmitted via the internet.

In addition, evidence would show that iPhones, such as

the iPhone belonging to this defendant, are manufactured in

Taiwan and have traveled in interstate or foreign commerce.

Those are the facts that the government would prove at

1    a trial.

2              THE COURT:  Thank you, Mr. Grady.

3              Mr. Clem, did you do the things that United States

4    Attorney Grady said that you did?

03:45:17PM 5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you admit that everything that

7    Attorney Grady just told me is true?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you want to add any facts or subtract

03:45:25PM 10   any facts or change any of the facts that I've just heard?

11             THE DEFENDANT:  No, your Honor.

12             THE COURT:  Are you pleading guilty because you are

13   guilty and for no other reason?

14             THE DEFENDANT:  Yes, your Honor.

03:45:32PM 15             THE COURT:  Mr. Nathan, is there any reason that you

16   can think of why I should not take this change of plea?

17             THE DEFENDANT:  No.  I have reviewed all the evidence

18   with Mr. Clem as well.  The United States Attorney's office has

19   an open-door policy.  I met with the prosecutor and reviewed

03:45:51PM 20   the evidence that is summarized in the United States Attorney's

21   statement of facts, and I believe that the evidence that I

22   reviewed with Mr. Grady is provable.

23             THE COURT:  All right.  Thank you then.

24             In that case, Mr. Alba, you may inquire.

03:46:09PM 25             THE CLERK:  Mr. Matthew Clem, as to Counts One, Two

1    and Three of a Superseding Information charging you with sexual

2    exploitation of a child in violation of Title 18, United States

3    Code, Section 2251(a), how do you plead, guilty or not guilty?

4              THE DEFENDANT:  Guilty, sir.

03:46:25PM 5              THE CLERK:  Thank you.

6              THE COURT:  All right.  Mr. Clem, you can return to

7    counsel table.  Thank you.

8              THE DEFENDANT:  Thank you.

9              THE COURT:  I find that Mr. Clem is competent and

03:46:33PM 10   capable of entering into an informed plea and that he is aware

11   of the charges against him and the consequences of pleading

12   guilty.  I find that his plea of guilty is knowingly and

13   voluntarily made and supported by an independent basis in fact

14   containing each of the essential elements of the offenses

03:46:51PM 15   charged.

16         I, therefore, accept the guilty pleas, and the

17   defendant is now adjudged guilty of those offenses.

18             Mr. Alba, what date for sentencing?

19             THE CLERK:  July 13 at 10:00 a.m.

03:47:03PM 20             THE COURT:  July 13th at 10:00 a.m. is that --

21             MR. GRADY:  It does work, your Honor.  And I would

22   just add that the parties have discussed the defendant faces

23   additional charges in the Worcester Superior Court.  I have

24   been in discussions with the marshals about how the state may

03:47:18PM 25   arrange to habe the defendant to that location.  I have been

1    provided with paperwork, which the marshals will review and

2    make a determination concerning whether to do that.  And it is

3    the hope that the defendant will be sentenced in the morning

4    and then have the opportunity to plead guilty and be sentenced

03:47:37PM 5    in the Worcester Superior Court that afternoon.  Thus, the

6    request for the 10:00 a.m. sentencing.

7         THE COURT:  Do you have -- do you represent the

8    defendant in the state cases?

9         MR. NATHAN:  Myself and Attorney Harold Naughton from

03:47:48PM 10    Worcester, yes.

11         THE COURT:  Okay.  Good.

12         MR. NATHAN:  Mr. Naughton would have liked to be here

13    today; however, he's in session.

14         THE COURT:  Okay.  Thank you.  Okay.  So that date

03:47:55PM 15    works for you?

16         MR. NATHAN:  Oh, I'm not that busy.  I'm free in July.

17    I may -- I'm waiting on an expert's report.  I'm hoping that it

18    is going to be finished by then.  He has been to the jail.

19    There are some issues, as I said, with the jail visits that I

03:48:10PM 20    would like to address now.  But if I need more time it will

21    just be because my expert hasn't been able to get back to the

22    jail yet.  It's Dr. Brown from Newton, who is pretty busy, as

23    you may well know.

24         THE COURT:  That's fine.  Keep me posted.

03:48:24PM 25         And what was it that you wanted to say about the

1   visits?

2          MR. NATHAN:  Yes, your Honor.  I mean that goes to the

3   issues of the jail visits that now when the attorneys come in

4   for a jail visit -- and this is new over the last six

03:48:39PM 5   weeks -- that what they're doing is cavity searches of the

6   detainees after an attorney visit only, and that is why, as I

7   said, Mr. Clem knows how to reach me.  He knows when I'm

8   reachable directly.  I always take my clients' calls, but in

9   the course of dealing with my detained clients, this need must

03:49:07PM 10   have arisen from the fact that an unscrupulous attorney brought

11   something in and -- and I think your Honor should know that the

12   detainees don't want to see their lawyers, you know, because

13   they don't want to have a cavity search.  I wouldn't mind, and

14   I've been up to jails around the United States.  If they want

03:49:28PM 15   to search me when I come through, if a metal detector is not

16   enough, if they want to subject me to a cavity search, if they

17   want me to, you know, stick my tongue out or anything else, I

18   would do it.  I mean -- and I'm a full-time defense guy, as you

19   know.  And that to me would be part of the business.  But

03:49:51PM 20   how -- how is it served to be an effective attorney.  You've

21   got to be able to interact with your client, and you've got to

22   be willing to go to jail, and you've got to be willing to go

23   into something new.  And to have the client say, look, just

24   mail it, and I'll call you.  I mean, you know, I know this is a

03:50:17PM 25   phone here, and there's mail, but there's the personal contact

1       being taken away by the facility of saying that I'm a criminal

2       when I'm not.  You know, I play by the rules, and if I went to

3       jail I would be looking to see who, you know, does the attorney

4       have a criminal record; does the attorney -- was he ever

03:50:37PM 5  disbarred or publicly reprimanded and search that attorney or

6       just search every attorney.  But -- but what they're doing by

7       searching the inmates is they're basically saying, yeah, maybe

8       the attorneys won't come in so much, you know, and why does the

9       attorney got to come so often, or, you know, it's just not a

03:50:59PM 10 good thing.  And I think your Honor should know that that sign

11      is posted in big -- it's a big new red sign.  It's like yeah

12      big.  And it says, "Note to all attorneys.  Your client is

13      going to be subject to a cavity search after he sees you."

14      You've got to sort of wonder, well, you know, what happened?

03:51:18PM 15 Something must have happened.  I don't think they would do it

16      out of the blue.  But I think that people in the position of

17      authority in the judicial system should be aware of the

18      trampling on the defendant's relationship with their attorney

19      that that kind of activity takes place.  I don't think it

03:51:38PM 20 affected this case, but it will affect others.

21            Thank you.

22            THE COURT:  Thank you.  I will look into that.  Thank

23      you.

24            All right.  Mr. Clem, we will see you back here in

03:51:52PM 25 July.  The probation office is going to do an interview with

38

1    you, as I talked about a couple of minutes ago, and you're

2    going to get a draft copy of that report.  Take your time and

3    read it.  Even minor mistakes need to be corrected, okay.

4              THE DEFENDANT:  Yes, your Honor.

03:52:11PM  5              THE COURT:  All right.  Good luck, and we'll see you

6    back here in July.

7              Thank you, everybody.

8              THE DEFENDANT:  Thank you, your Honor.

9              MR. GRADY:  Your Honor, before we go off, just given

03:52:16PM 10    the issues that were raised, is there any contention here that

11    there has been an inability to communicate with counsel prior

12    to this plea in which case I would be happy to give the

13    defendant and his counsel additional time, if it's necessary,

14    if that's the claim?

03:52:30PM 15              MR. NATHAN:  No.

16              THE COURT:  I didn't hear that but --

17              MR. GRADY:  Okay.

18              THE COURT:  -- let's get it on the record.

19              MR. NATHAN:  No, I think I made it clear everything

03:52:36PM 20    was mailed, and Mr. Clem has been able to call me, you know,

21    with a relative degree of frequency about this matter as well

22    as other issues going on, but -- but to hear a client say -- I

23    really don't want to see -- you know, they're doing cavity

24    searches, Mr. Nathan, and I really think it's best if I call

03:52:59PM 25    you.  You know, that's like, oh, yeah, that sign.  Yeah, it

1    says they're going to do a cavity search of everyone who has an

2    attorney.  Every detainee.  For what?  That's a private jail.

3    I guess they really are privatizing things there.

4              Thank you.

03:53:20PM 5              THE COURT:  Thank you.

6              MR. GRADY:  Nothing else, your Honor.  Thank you.

7              THE COURT:  Thank you.

8              THE CLERK:  All rise.  Court is in recess.

9              (At 3:53 p.m. Court was adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T E

3

4              I, Marianne Kusa-Ryll, RDR, CRR, do hereby

5    certify that the foregoing transcript is a true and accurate

6    transcription of my stenographic notes before the Honorable

7    Timothy S. Hillman, to the best of my skill, knowledge, and

8    ability.

9

10

11       /s/ Marianne Kusa-Ryll                    4/25/16

12       Marianne Kusa-Ryll, RDR, CRR              Date

13       Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25